S. R. H. ROBINSON & SON CONTRACTING COMPANY *v.* GEYER
& ADAMS.

Opinion delivered March 17, 1913.

CONTRACTS—CONTRACT FOR SUPPLIES—LIABILITY FOR.—When appellant
  orders supplies from appellee from time to time, but does not
  notify appellee to discontinue furnishing said supplies, the appellee
  may assume that the persons ordering the supplies are authorized
  to continue to do so, and having delivered supplies in the usual
  way at the usual place, the appellant is liable therefor.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

*J. A. Comer,* for appellant.

*L. E. Hinton* and *R. W. Irvine,* for appellee.

KIRBY, J.   Appellee brought this suit in justice court
for a balance claimed to be due upon an account for supplies furnished to appellant company, while it was engaged in the construction of a drainage ditch, and from
a judgment in its favor the Robinson Company took an
appeal to the circuit court, where appellee again recovered judgment, from which this appeal comes.

Appellant corporation, with its principal offices in
St. Louis, took a contract for the construction of a large
ditch near Argenta, with Pulaski Drainage District No. 1.
Mr. Robinson, representing the company, told appellees
that they were running a camp at the works and wanted
to be supplied with goods.   Arrangements were made
and the first order of supplies was sent to the camp by
appellee, Robinson, himself, giving the directions for
finding the place of delivery.   All the goods and supplies were sent in this manner to the camp, the driver
of the delivery wagon taking duplicate bills therefor, one
of which was left with the person receiving the goods at
the cook tent, or office, and the other signed by the person receiving the goods and returned to the shipping
clerk of appellee.   All supplies were delivered in this
manner for several months and all the bills paid, except
for the last three deliveries on June 13, July 13 and

August 19, 1910, which were made in the same manner as all the other goods had been delivered. The same person did not sign all of the delivery tickets, in fact, nearly all of them were signed by different persons. Mrs. Watson signed the tickets for the last two bills of goods delivered. The driver of the wagon said he delivered August bills and a lady signed the tickets, which was the first time a lady had signed the tickets when he delivered the goods. She was the only one around the kitchen or tent and there was no change in the appearance of the place.

R. A. Denser, secretary and treasurer of appellant company, examined the account and stated that appellant had received one bill of goods, amounting to $42.02 that had been used by its men on the dredge, but that the other items and bills of goods were bought by W. A. Watson, an employee of T. A. Stoddard, a subcontractor, who had the contract for the concrete work. The witnesses stated that they broke camp on March 15, 1910, moved all the tents except the cook tent, and had no men at the camp after March 15, 1910. That there was still a little dredge work to be done and they were tied up by an injunction and left an engineer and foreman on the dredge, which was two or three miles from the camp; that he knew nothing about these goods having been purchased until nearly a year afterwards, on April 1, 1911, and that he received a letter from appellees on March 1, 1911, in regard to the account. He stated his company did not receive any benefits whatever from any of the goods sued for and did not authorize any one to order them and that they were not delivered to his company nor any of its employees. Stated further that he stayed in St. Louis most of the time, came down to the works every month, sometimes oftener, and that the company did not know there was any camp there after March 15, 1910, when they had moved the camp, and "when they got the goods, we never asked any questions about the placing of the order; didn't look up to see who checked the order, just paid for the goods when we re-

ceived them. I didn't follow up each individual invoice. I would have had no occasion to do so after March 15, 1910, the date the camp was moved, and didn't tell Geyer & Adams not to send any more goods to the camp because I didn't regard it necessary when we had broken camp, there being no further necessity for sending the goods." He admitted receiving certain of the goods, the $42.02 worth that were used by the men on the dredge, and said: "We took the goods from the camp to the dredge. The men on the dredge left on July 1, and went to work for us in East St. Louis. No one was left in our employ on the grounds after that time." Stated positively that they did not receive the goods on August 19, ticket for which was signed by Mrs. Watson, and for the one on July 13, signed likewise; that Mrs. Watson was never in the employ of the company and that they did not maintain a camp at those dates and had no one there. That the dredge was three miles from the camp.

The testimony shows that the goods were regularly delivered to the Robinson camp, in response to different orders over the telephone and otherwise and receipted for at the camp by different persons signing the tickets and that no directions, whatever, had been given to appellee company to deliver the goods to any particular individual, or require the receipt of any particular person, or agent, upon the ticket at the time of delivery.

It was not disputed that all the goods claimed to have been delivered were delivered at the camp in the usual way, but only that appellant company had broken camp on March 15, 1910, and thereafter had no need or use for supplies there, and that none were delivered to it. It admits, however, that one of the bills of goods sued for, although delivered at this camp where the old cook tents still remained and the office, as before the breaking up of the camp, had been received and used by the foreman on its dredge about three miles distant and that some little bit of the equipment still remained at the camp, or cook tent, which was not moved, until some months after the camp was abandoned.

Under all the circumstances, appellee had the right to assume that the persons ordering the last supplies were authorized to do so, and, having delivered them in the usual way, appellant became liable to pay therefor. The testimony is amply sufficient to sustain the finding of the circuit court and the judgment is affirmed.